**AERO NECK–BAND & COLLAR CO., Inc., et al. v. BEAVER MFG. CO., Inc.**

**Nos. 334–338.**

Circuit Court of Appeals, Second Circuit.

June 6, 1938.

Irving F. Goodfriend, of New York City (Victor M. Helfand, of New York City, on the brief), for appellant.

W. Hastings Swenarton, Maxwell E. Sparrow, and Robert M. Kristal, all of New York City, for appellees.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

This suit is for infringement of claim 1 of the Lind and Feigenbaum patent, No. 1,995,187, granted March 19, 1935 (qualified by a disclaimer filed at the close of the trial), by the sole and exclusive licensee and by the patentees. Eight different suits were simultaneously tried by the district court, some predicated upon contributory, others upon direct infringement. The Chemical Coating & Equipment Co., Inc., which processed the materials used in the infringing articles, conducted the defense of the actions against all of the defendants except one, as well as its own defense. The Chemical Company has obtained a severance and has appealed. The appellant Beaver Manufacturing Co., Inc., and two others (Hyman Heller and Dresswell Shirts, Inc.) have appealed, the Chemical Company joining in each appeal. An order has been entered consolidating all of the appeals.

Claim 1, as qualified by the disclaimer, provides for "a folded collar, comprising fabric plies of textile material, and an interlining between the plies and extending over the fold line thereof, said interlining comprising a sheet of light weight, closely woven textile material having a thermoplastic, waterproof, cementitious coating or coatings thereon extending over substantially the entire surface of each side of the interlining and uniting substantially the entire surface of each side thereof to an. adjacent ply or plies and at least at the fold line of the collar, whereby the collar is flexibly stiffened at least at the fold line without appreciable bulkiness."

The object of the invention is to provide a collar which is "constructed of such materials and treated in such a manner as to present the appearance of being starched without in any wise excessively stiffening the fabrics composing the article by starching substances generally used for the purpose; one which will not rumple or wilt from moisture or perspiration and other offensive means when worn close to the body, thereby always retaining its shape and preserving its neat appearance and being comfortable and free from wrinkle, curl or crush even under very trying usage; and which can be cleansed by ordinary washing and laundering and made presentable without starching."

The interlining that the patentees refer to in the specifications as an undesirable "coarse and heavy interlining material" must be construed to be a fabric having a thread count of approximately 48x44 and 48x48 to the square inch and a weight that varies from 2.85 yards to 8.20 yards per pound. The patentees thus coated with a stiffening agent a print cloth instead of the conventional fabric known as sheetings and used it in the conventional collar construction. Invention was granted for this construction upon the claim that a new result was obtained by cementing "at the fold line" the fine weave interlining to the inner and outer fabric plies.

Appellees' collars are made in three plies of cloth. Between the two exterior plies is the interlining. This is a usual type of construction but appellees' claim invention on an interlining which they say differs from that theretofore used. In the collar art it had been customary to use a heavier or coarser interlining than that re-

ferred to in the patent. This coarse interlining allowed the starch to collect in the interstices of the cloth thus giving rigidity to the collar. Appellees contend that the coarse cloth detracted from the appearance of the product. The patentees sought to fashion a collar that would not require starching with its accompanying discomfort to the wearer, but at the same time would have sufficient rigidity to make a neat appearance. The old type of stiff collar would also become limp and soiled due to perspiration or other moisture melting the starch. The patentees said that they "found that by using an interlining made from a light weight, fine yarn cloth of a count between approximately 68x72 and 96x100 threads to the square inch, such as, for example, fabric, commonly known as print cloth, and coating both sides of this interlining with a suitable waterproof, elastic or flexible agent, a medium, instrumentality is provided which when fused to the outer and inner plies of the article by the simple application of a warm iron, imparts to the article all the desirable attributes and characteristics stated hereinabove and rids the article of all the hereinabove disadvantages" pointed out in the specifications.

The patentees were not the first to make a wholly fused collar, as found below. The collar construction found to be novel was known in the patent granted to Bebie & Doelling when they filed their application, on April 24, 1933, from which issued patent No. 2,040,819 prior to appellee's date of invention. The object of Bebie & Doelling was stated to be the same as the patentees here, namely, to provide a starchless wrinkle-proof collar. The Bebie and Doelling specification pointed out that "according to prevailing practice * * * the collar construction is produced by superposing a plurality of plies of the textile, * * * consisting of an under-panel, * * * an interliner * * * and an exposed ply or top * * * its several plies are disposed in registration, one upon another, and stitched by a marginal line of stitching 5. Thus, until * * * securing the collar to the neck band or shirt, the collar is in the nature of a multiple ply envelope and may be selectively turned inside out or right side out." Also, "After the collar is completed, and turned right side out, and is subjected to heat and pressure by ironing, the layers * * * are rendered plastic. Due to the thermoplastic nature of the material constituting these layers, they are adhesively united with each other and to the layers of cloth by which they are carried, so that, upon finishing the collar according to the usual steps, several or all of the plies thereof become, in effect, a structural unit characterized by a degree of flexibility such as to be entirely comfortable to the wearer, and yet possessed of sufficient stiffness as not to wrinkle or become deformed under the influence of protracted wear, or when subjected to repeated laundering operation including washing and ironing."

Bebie and Doelling did not wish to impregnate the interstices of the cloth but rather desired to have a superficial coating. Their thermoplastic, cementitious, flexible material or coating was substantially the same as the commercial coating used by the present patentees. The only difference between Bebie and Doelling's structure and that of the patentees' is that the former did not, with particularity, state the weight of the cloth or the weave thread count. They do, however, state that their collars are to be made according to the prevailing practice. That is shown to be interlinings weighing 2.85, 5 and 8.20 yards to the pound, and having a weave of 48x48 or 40x44 threads to the square inch.

Ripley's patents No. 1,994,787 and No. 1,994,785 of the prior art, disclosed a collar construction similar in detail to that claimed by the patentees. He had available any and all linings conventionally used at that time in the collar art, including 5 yards to the pound, 48x48 material. His optional construction shown makes it clear that appellant's collar was old in the patent sense at the time the patentees entered the field. He seems to have fully apprehended the problem and suggested the plasticizer to be used, stating that the desired degree of flexibility may be obtained by using a suitable plasticizer. He knew that the proper flexible stiffness at the fold line depended not on the characteristics of the interlining used, but rather on the proper chemical coating. He states that the upper marginal edge portion is kept free from the stiffening cement by a bar which is placed thereover during the first coating operation. After that the fold line is coated with a suitable cement.

The difference between Ripley and the patentees' is that the latter used throughout the collar leaf the cement which Ripley used solely on the fold line. Both Ripley and the patentees include cellulose, a gum and a suitable plasticizer. There was, therefore, little left for the appellees to accomplish

over Bebie and Doelling and Ripley. They did nothing but construct, with some minor difference which would occur to one skilled in the art, a starchless non-wilt collar with an interlining of specific characteristics, and this did not amount to invention. Gynex Corp. v. Dilex Institute, 2 Cir., 85 F. 2d 103.

The ease and readiness of solving the problem presented to these inventors clearly indicates that ordinary skill by one of the trade rather than invention was involved in its solution. New York Scaffolding Co. v. Chain Belt Co., 254 U.S. 32, 41 S.Ct. 21, 65 L.Ed. 116.

The problem confronting these patentees was solved by the simple expedient of using a finer, more pliable material. They are not entitled to a monopoly for judicious selection of materials, the use of which would produce the results to be expected from such selection. Continental Fibre Co. v. Formica Insulation Co., 6 Cir., 287 F. 455. One skilled in the art, trying one material which was a little too stiff for the purpose, would go to another material available to him which was easier to bend. This is what the patentees did. There was no invention in their accomplishment. Claim 1 of the patent is invalid.

Decree reversed.